UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN BRADLEY FOUTS,

  Plaintiff,

v.

DIANE HOULTON, et al.,

  Defendants.

CASE NO. 3:23-CV-5594-RAJ-DWC

REPORT AND RECOMMENDATION

Noting Date: April 19, 2024

The District Court has referred this prisoner civil rights action to United States Magistrate Judge David W. Christel. Plaintiff Nathan B. Fouts, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983, alleging he was denied adequate medical care during his pretrial confinement at Mason County Jail in violation of the Fourteenth Amendment to the United States Constitution. Dkt. 13. Before the Court for consideration is Defendants Mason County and Kevin Hansen's (collectively "County Defendants") Motion for Judgment on the Pleadings.[1] Dkts. 46, 57. County Defendants are joined in their Motion by Defendants Diane Houlton and Health Care Delivery System Administrator. Dkt. 50.

---

[1] County Defendants initially styled their Motion as one for summary judgment but, in response to the Court's Show Cause Order (Dkt. 55), County Defendants agreed the Motion was better treated as one for judgment on the pleadings (Dkt. 56). *See also* Dkt. 57.

REPORT AND RECOMMENDATION - 1

1    For the reasons set forth below, the undersigned recommends the Motion (Dkt. 46) be
2  granted, Plaintiff's claims for injunctive relief be dismissed as moot, and other all claims be
3  dismissed with prejudice.

## I. BACKGROUND

**A.  Factual Background**

Plaintiff, who is currently incarcerated at Washington State Penitentiary, initiated the instant suit challenging the medical treatment he received during pretrial detention at Mason County Jail. Dkt. 13. More specifically, Plaintiff complains about temporary adjustments made to his pain management plan upon entry to that facility. *Id.*

Plaintiff suffers from a degenerative birth-defect known as Leff-Calve-Perthes Disease, which causes chronic pain in his left leg and difficulty walking and sitting for long periods of time. *Id.* at 6–7. Plaintiff has previously been detained at Mason County Jail and states he is generally given over the counter ("OTC") pain medication to manage his chronic pain until he is able to be seen by a medical provider. *Id.*

During the relevant period of pretrial detention, Plaintiff was seen by an unnamed medical provider on June 25, 2023. *Id.* at 7. Before this visit, Plaintiff was prescribed naproxen—an OTC pain medication—but complained that it did not effectively manage his pain and neither did similar OTC medications. *Id.* Plaintiff states the unnamed medical provider then prescribed him 600mg of gabapentin twice daily to manage his pain. *Id.* The following day, Defendant Diane Houlton, a nurse at Mason County Jail, informed Plaintiff the gabapentin prescription was overridden by the Medical Director, who updated Plaintiff's treatment plan to include only OTC pain medications. *Id.*

Disagreeing with the Medical Director's decision, Plaintiff became upset and was concerned about the new plan for managing his pain. *Id.* So, that same day, Plaintiff began

REPORT AND RECOMMENDATION - 2

writing medical grievances (*Id.* at 8) and drafted the initial Complaint for this action (Dkt. 1 at 12 (signed on June 26, 2023)). Over the next fourteen days Plaintiff says his pain worsened to the point that he could not participate in daily activities with ease and could walk only for a limited time. Dkt. 13 at 8. Although Plaintiff claims his medical grievances went unanswered during this period, he also states he was seen by a medical provider within two weeks of his initial grievance and was continuously offered OTC pain medication by Nurse Houlton and others. *Id.* at 7–10.

On July 7, 2023—the day before Plaintiff was seen by the medical provider—he declared two medical emergencies. Dkt. 7–8. Plaintiff states Nurse Houlton responded to his first emergency declaration by peering into his cell, telling Plaintiff he was not in pain, refusing to give him gabapentin, and closing his cell door. *Id.* Immediately after Nurse Houlton cleared Plaintiff, he declared a second medical emergency. *Id.* at 8. Plaintiff alleges Nurse Houlton did not return to examine him. *Id.* at 8–9. Plaintiff then sent a medical grievance requesting OTC pain medication. *Id.* Because he had previously refused that medication, Plaintiff alleges his request was denied and he was told he needed to wait until he could be seen by a medical provider. *Id.*

Plaintiff was seen by a medical provider the following day. *Id.* at 7. During that visit, Plaintiff was prescribed gabapentin at a lower dose of 100mg three times daily. *Id.* There is no allegation this prescription or dosage was overridden by the Medical Director or otherwise changed for the duration of Plaintiff's pretrial detention.

Believing the poor management of his pain to be deliberate indifference to a serious medical need, Plaintiff filed suit against Defendants Mason County, Kevin Hansen, Diane Houlton, Medical Director, and Health Care Delivery Systems Administrator, alleging violations of the Fourteenth Amendment to the United States Constitution. Dkt. 13. As relief, Plaintiff

seeks monetary damages and an injunction requiring he be prescribed 600mg of gabapentin twice daily and ordering Mason County to change the way it handles medical grievances. Dkt. 13 at 15.

**B. Procedural Background**

On February 2, 2023, Defendants filed the pending Motion as a Motion for Summary Judgment. Dkt. 46. After an initial review of the Motion, the Court directed Defendants to show cause why the motion for summary judgment should not be construed as a motion for judgment on the pleadings. Dkt. 55. Defendants filed a response agreeing the Motion was better treated as a motion for judgment on the pleadings. Dkt. 56. As such, on February 26, 2024, the Court notified the parties Defendants' Motion would be construed as a motion for judgment on the pleadings. Dkt. 57. Plaintiff filed a response to the Motion on March 26, 2024. Dkt. 59. Plaintiff's Response includes three pages of legal argument (Dkt. 59-1 at 1-2, 21) and over 200-pages of medical records and grievances (*Id.* at 3–20, 22–81, Dkts. 59-1, 59-2).

In deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence. *See* Fed. R. Civ. Proc. 12(d) (stating that a Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court). As the Court has previously determined the Motion should not proceed as a motion for summary judgment, the Court declines to convert the Motion based on Plaintiff's filing of evidence. Therefore, the Court will only consider the legal argument provided in Plaintiff's Response (*see* Dkt. 59-1 at 1-2, 21).[2]

---

[2] The Court notes that it reviewed the evidence filed with Plaintiff's Response. Plaintiff's evidence adds very little to the allegations outlined in his Amended Complaint; therefore, even if the Court converted the Motion to

## II. STANDARD OF REVIEW

In the instant Motion, Defendants move for dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 13. A motion for a judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999). Because a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion are functionally identical, the motion to dismiss standard applies to Rule 12(c) motions. *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

---

a motion for summary judgment, the evidence submitted by Plaintiff would be insufficient to create a genuine issue of material fact.

1  However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, it does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by specific facts are not sufficient to state § 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Although *pro se* complaints must be construed liberally, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

### III. DISCUSSION

Defendants argue Plaintiff's § 1983 claims should be dismissed for four reasons. First, Plaintiff's requests for injunctive relief are now moot because he is no longer housed at Mason County Jail. Dkt. 46 at 6–7. Second, Plaintiff has failed to sufficiently allege personal participation by individual defendants in his individual capacity § 1983 claims. *Id.* at 7–9. Third, Plaintiff's individual capacity § 1983 claims for monetary damages should also be dismissed on qualified immunity grounds. *Id.* at 9–11. And fourth, Plaintiff has failed to sufficiently allege his injuries were caused by a Mason County policy or practice as required to state an official capacity § 1983 claim against the County. *Id.* at 6–7.

**A.   Plaintiff's transfer from pretrial detention at Mason County Jail renders his requests for prospective relief moot.**

Defendants first argue Plaintiff's request for injunctive relief must be dismissed as moot because Plaintiff is no longer in pretrial detention at Mason County Jail and there is no

1   reasonable expectation he will return to that facility for the duration of his time in state custody.
2   Dkt. 46, at 4–6.

3         Article III of the United States Constitution limits the jurisdiction of the federal courts to
4   live cases and controversies. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). As a result of this
5   limited jurisdiction, the mootness doctrine requires federal courts to dismiss claims that no
6   longer involve a "real and substantial" controversy. *Preiser*, 422 U.S. at 401 (citing *North
7   Carolina v. Rice*, 404 U.S. 244, 246 (1971).

8         The mootness doctrine is often implicated when a plaintiff challenging the policies or
9   conditions of a correctional facility is transferred or released from that facility. *Dilley v. Gunn*,
10  64 F.3d 1365, 1368 (9th Cir. 1995); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001).
11  Generally, the transferee or releasee's claims for prospective relief must be dismissed as moot.
12  *Diley*, 64 F.3d at 1368; *Nelson*, 271 F.3d at 897. This is because the transferred or released
13  plaintiff is no longer exposed to the facility's policies and conditions—as a result, a court order
14  aimed at those policies or conditions will do nothing to address his concerns. However, an
15  exception exists if there is a "reasonable expectation" or "demonstrated probability" the plaintiff
16  will return to the facility from which he was transferred or released and will once again be
17  exposed to its policies and conditions. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.
18  1986).

19        Here, Plaintiff makes two requests for injunctive relief. First, he would like Mason
20  County Jail to change the way it handles medical grievances and second, he would like the jail's
21  medical staff to prescribe him 600mg of gabapentin twice per day. Dkt. 13 at 15. However,
22  Plaintiff is no longer detained at Mason County Jail; he was transferred to Washington
23  Corrections Center on or around December 27, 2023, (Dkt. 35), then to Coyote Ridge
24

Corrections Center on or around February 7, 2024, (Dkt. 45), and transferred once more to Washington State Penitentiary (Dkt. 58). Because Plaintiff was released from pretrial detention to begin serving a sentence of confinement with the Washington State Department of Corrections, there is no reasonable expectation or demonstrated probability he will return to Mason County Jail and be subject to the policies and conditions at that facility. As a result, his claims for injunctive relief should be dismissed as moot.

**B.    Plaintiff has failed to plead a § 1983 claim against any defendant.**

The Fourteenth Amendment to the United States Constitution guarantees individuals the right to adequate medical care while in pretrial detention. *See Gordon v. Cnty. Of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). Even so, "[t]he mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (quotations and citations omitted). Rather, to state a § 1983 claim based on inadequate medical care, a pretrial detainee must show (1) the defendant acted intentionally with respect to the provision of inadequate medical care, (2) the inadequacies in care put the pretrial detainee at substantial risk of suffering serious harm, (3) a reasonable official in the defendant's shoes would have appreciated the substantial risk of harm, (4) the defendant did not take reasonable available measures to abate or mitigate the risk of harm, and (5) the defendant's failure to take such measures caused the plaintiff's harm. *Id.* (citing *Castro v. Cnty. Of Los Angeles*, 833 F.3d 1060, 1070–71 (9th Cir. 2016). *See also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("no significant distinction" between a pretrial detainee's claim based on inadequate medical care and those based on failure to protect).

"Demonstrating deliberate indifference requires a substantial showing," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021). "Neither mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without

more, is sufficient." *Fraihat,* 16 F.4th at 636 (internal alterations and citations omitted). Demonstrating a "difference of opinion between prisoner-patient and prison medical authorities regarding treatment" is also insufficient. *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Nor is it enough to show a difference of opinion between medical professionals; instead, a plaintiff must demonstrate the treatment they received was medically inadequate. *See Fausett v. Leblanc*, 553 Fed. App'x 665, 667 (9th Cir. 2014); *Gauthier v. Stiles*, 402 Fed. App'x 203, 2010 WL 4296663 at *1 (9th Cir. 2010) ("[N]either [the prisoner's] disagreement with the dosage or type of pain medicine administered after his nose surgery, nor his dissatisfaction with the denial of prescription strength pain medicine for two days, constituted deliberate indifference to serious medical needs.") (citing *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004)).

With respect to the third and fourth elements, the Ninth Circuit applies an objective deliberate indifference standard, meaning the consequences of a defendant's failure to act must be obvious to a reasonable person in his position. *Gordon*, at 1125; *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). Because the test is an objective one, it is of no consequence whether a defendant was personally aware of the aggravated risk of harm to the plaintiff—the critical issue is whether a reasonable person in his shoes would have been aware of it. *Id.*; *Castro*, 833 F.3d at, 1071. Although a defendant's subjective understanding of risk is not central to the analysis, the Court must still consider the facts and circumstances he acted under to determine whether a reasonable person in the same position would have realized and taken steps to abate the risk. *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)).

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained,

appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

*Kingsley,* 576 U.S. at 396 (citing *Bell v. Wolfish,* 441 U.S. 520, 540, 547 (1979) (cleaned up).

Plaintiff's contention that staff persons at MCJ were deliberately indifferent to his medical needs is belied by his own allegations that medical staff responded his grievances and adjusted his medication based on his reported pain levels. *See* Dkt. 13 at 8–9. Plaintiff does not describe a situation where his requests for pain management went wholly unanswered or were ignored for months on end. Rather, he complains that, over the course of 2 weeks, (1) he was seen by a medical provider and prescribed the pain medication of his choice (*i.e.*, gabapentin); (2) upon review of the unnamed provider's prescription, the Medical Director substituted gabapentin with OTC pain medication; (3) Plaintiff found the new medication to be ineffective and submitted medical grievances requesting to seen by a medical provider; (4) before he was seen by a medical provider, Plaintiff declared back-to-back medical emergencies about his pain; (5) Nurse Houlton responded to Plaintiff's first declaration and determined he was not experiencing a medical emergency; and (6) Plaintiff was seen by a medical provider the following day and placed back on his preferred pain medication, albeit at a lower dose. Dkt. 13 at 7–10. Assuming all these facts to be true, Plaintiff has failed to state a deliberate indifference claim against any defendant.

1. Plaintiff has failed to state a claim against the individually named defendants.

Starting with Plaintiff's claims against the individually named defendants, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how the individual defendants caused, or personally participated in causing, the harm

alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Plaintiff has not satisfied these requirements as to any of the individually named defendants.[3]

*Defendant Medical Director*. Starting with Defendant Medical Director, Plaintiff's allegations about the Medical Director's temporary adjustment to his pain management plan are insufficient to demonstrate deliberate indifference to a serious medical need.

It is clear Plaintiff disagrees with the Medical Director's decision to prescribe OTC pain medication to treat his chronic pain, but Plaintiff's disagreement is insufficient to demonstrate deliberate indifference. *See Franklin*, 662 F.2d at 1344. And, although Plaintiff places significant weight on the fact the Medical Director's treatment plan differed from the treatment plan put in place by the unnamed provider, a mere difference of opinion between medical providers is also insufficient to show deliberate indifference. *See Gauthier*, 402 Fed. App'x 203, 2010 WL 4296663 at *1; *Fausett*, 553 Fed. App'x at 667 (ordering pain medication different from what was recommended by surgeon for post-surgical pain management is not deliberate indifference). Plaintiff does not allege the Medical Director denied him pain relief of any kind, nor does he allege the Medical Director prescribed medically unacceptable pain medication. Rather, Plaintiff alleges he was temporarily denied the pain medication of his choice and given a less-effective alternative. At worst, Plaintiff's allegations demonstrate the Medical Director altered his treatment plan with lack of due care, which is insufficient to state a deliberate indifference claim under the Fourteenth Amendment. *See Gordon*, 888 F.3d at 1125. Thus, Plaintiff's claims against the Medical Director should be dismissed.

---

[3] Included in the Court's analysis is Defendant Medical Director, who has not yet been served in this action and has therefore not joined in the instant Motion. *See* Dkt. 16 (attempted service); *see generally* Docket (no waiver of service of summons or other filing by Medical Director). Rather than ordering personal service of a deficient claim, the Court reviews the sufficiency of the pleadings against the Medical Director *sua sponte*. *See* 28 U.S.C. §§ 1915A(a)–(b), 1915(e)(2)(B).

*Defendant Health Care Delivery Systems Administrator.* Next, Plaintiff alleges Defendant Health Care Delivery Systems Administrator was deliberately indifferent to his serious medical need by failing to adequately train the medical staff on responding to medical grievances. Dkt. 13 at 10. In addition to this being a conclusory allegation, it is contradicted by Plaintiff's other allegations he was seen by a medical provider within two weeks of submitting his first grievance and, in the interim, he was offered OTC pain medication in accordance with Medical Director's treatment plan. *Id.* at 7–10. Therefore, Plaintiff has not plausibly alleged the Administrator failed to adequately train medical staff on how to respond to medical grievances or that any lack of adequate training caused his medical grievances to go unanswered. And so, Plaintiff's individual capacity § 1983 claim against Defendant Health Care Delivery Systems Administrator also fails and should be dismissed.

*Defendant Houlton.* Plaintiff's most detailed allegations are against Defendant Houlton; even so, he fails to plead a § 1983 claim against her.

Plaintiff alleges Nurse Houlton participated in causing his alleged constitutional injury by improperly responding to his back-to-back medical emergency declarations. First, he complains Nurse Houlton exhibited deliberate indifference because she allegedly responded to his first emergency declaration by telling him he was not in pain, declining to give him gabapentin, and closing his cell door. Dkt. 13 at 7. This conduct, though not what Plaintiff expected, is not deliberate indifference to a serious medical need. *Wood v. Housewright*, 900 F.2d 1332, 1333–35 (9th Cir. 1990) (medical care that is not "as prompt or efficient as a free citizen might hope to receive" but addresses a prisoner's needs does not violate the constitution).

This is particularly true in light of Plaintiff's allegation Defendant Houlton offered him OTC pain medication, which he refused. Dkt. 13 at 7–8; *see also Vazquez v. Conanan,* No. 21-

REPORT AND RECOMMENDATION - 12

16731, 2023 WL 2624782, at *2 (9th Cir. Mar. 23, 2023) (medically acceptable interim care vitiates a finding of deliberate indifference). Moreover, although Defendant Houlton did not immediately give Plaintiff the specific medication he demanded from her, he was seen by a medical provider the following day and was re-prescribed gabapentin. *See Gauthier*, 402 Fed. App'x 203, 2010 WL 4296663 at *1; *Wood*, 900 F.2d at 1333–35. Therefore, even assuming Defendant Houlton had the authority to prescribe gabapentin the moment Plaintiff demanded it, the nurse's decision to defer to, rather than depart from, the current pain management plan put in place by the Medical Director was both reasonable and harmless under the circumstances alleged here. *C.f. Berry v. Peterman,* 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.").

      Plaintiff's next complaint is about Defendant Houlton's failure to respond to his second medical emergency declaration. Immediately after Nurse Houlton cleared Plaintiff of his first claimed emergency, he declared a second medical emergency. Dkt. 13 at 8. According to Plaintiff, Defendant Houlton ignored this second declaration and did not return to his cell to examine him. *Id.* Taking these allegations as true, Defendant Houlton was, at worst, negligent in deciding not to examine Plaintiff moments after she cleared him from his first medical emergency declaration. Even so, the impact of this decision was fleeting as Plaintiff was seen by a medical provider the next day and given gabapentin to better manage his pain. *See Wood*, 900 F.2d at 1333–35 (no deliberate indifference where negligent conduct resulted in unmanaged pain, but prisoner was seen and treated by a provider within "several" days of filing his grievances); *Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir. 1998) (negligent delay in administering pain

medication for a pretrial detainee's broken leg, in treating his broken nose, and in providing a replacement crutch were not deliberate indifference); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (to constitute deliberate indifference, any treatment delays must cause further injury).

Accordingly, Plaintiff has failed to demonstrate Defendant Houston was deliberately indifferent to his serious medical need. Thus, Plaintiff's claims against the Defendant Houston should be dismissed.

*Defendant Hansen.* Plaintiff has also failed to plead an individual capacity § 1983 claim against Defendant Hansen—the Chief Security Officer at Mason County Jail—for several reasons.

First, Plaintiff does not allege sufficient facts demonstrating whether a reasonable officer in Defendant Hansen's shoes would have appreciated the risk of harm—if any—he faced by being prescribed OTC pain medication instead of gabapentin for a 2-week period. Even assuming a reasonable officer could have learned Plaintiff was experiencing pain through his medical grievances, Defendant Hansen is not a medical professional and there is no evidence or allegation he has any specialized medical training or knowledge. Therefore, absent additional facts showing Plaintiff's risk of harm would have been obvious to a non-medical professional like Defendant Hansen,[4] a reasonable officer in his shoes could not be expected to appreciate the risk Plaintiff allegedly faced from the temporary adjustment to his pain medication.

---

[4] On this point, Plaintiff alleges his mobility diminished as his pain worsened. Dkt. 13 at 8. However, he also alleges that inability to walk or sit for prolonged periods is a typical side effect of his chronic pain (*id.* at 6–7), and there are no allegations to show Plaintiff's further diminished mobility would have put a reasonable officer on notice of any aggravated risk of harm.

REPORT AND RECOMMENDATION - 14

1      Next, contrary to Plaintiff's conclusory allegations, the facts alleged here demonstrate
2 reasonable steps were taken to mitigate any potential risk of harm posed by the ineffective
3 management of Plaintiff's pain. Plaintiff claims Defendant Hansen should have mitigated his
4 alleged risk by either (1) ordering medical staff to ignore the Medical Director's treatment plan
5 by giving Plaintiff the medicine he demanded or (2) replacing the entire medical staff at Mason
6 County Jail. *See* Dkt. 13 at 9. Neither of these actions would have been a reasonable response to
7 Plaintiff's alleged risk of harm. *See McConnell v. Dahliwal*, No. 2:21-cv-3661-CBM-MAA,
8 2022 WL 18397131, at *3 (C.D. Cal. Nov. 14, 2022) ("'If a prisoner is under the care of medical
9 experts… a non-medical prison official will generally be justified in believing that the prisoner is
10 in capable hands,' and therefore prison officials cannot be liable for deliberate indifference to
11 prisoner's serious medical needs 'simply because they failed to respond directly to the medical
12 complaints of a prisoner who was already being treated by a prison doctor.'") (quoting *Spruill v.*
13 *Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Rather, a reasonable officer in Defendant Hansen's
14 position would be expected to (1) ensure the jail's medical staff cleared Plaintiff of any medical
15 emergencies and (2) ensure Plaintiff was seen by a medical provider to reassess his pain
16 management plan. Plaintiff recognizes both these steps were taken here. Dkt. 13 at 7–10. Thus,
17 Plaintiff's claims against the Defendant Hansen should be dismissed

18      In summary, Plaintiff has failed to plead a deliberate indifference claim against
19 Defendants Medical Director, Health Care Delivery Systems Administrator, Diane Houlton, and
20 Kevin Hansen. Because Plaintiff's individual capacity § 1983 claims are unavailing, the Court
21 will not address Defendants' alternative argument based on qualified immunity.

22    2. <u>Plaintiff has failed to state a claim against Mason County.</u>
23      Finally, as outlined above, Plaintiff has failed to plead he suffered deliberate indifference
24 to a serious medical need while detained at Mason County Jail. However, an independently

sufficient reason for dismissing Plaintiff's official capacity § 1983 claims is his failure to attribute his injuries to an official Mason County policy or custom. *See* Dkt. 46 at 6–7.

A local government unit or municipality—like Mason County—can be sued as a "person" under § 1983. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691–94 (1978). However, a county cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Instead, a plaintiff suing a county under § 1983 must identify a county "policy" or "custom" that caused his injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694). A plaintiff must also demonstrate the county's deliberate conduct was the "moving force" behind the injury alleged. *Id*. at 404. County liability may also exist where there is a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).

In his Amended Complaint, Plaintiff claims the temporary change to his pain management plan was aggravated by Mason County Jail Policy 619.3.3, which he alleges, "stops medical grievances at LT or Chief, [which] are not qualified medical professionals." Dkt. 13 at 9. However, the Court need not accept this allegation as true if it is contradicted by facts subject to judicial notice, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the contents of publicly available government policies—such as the Mason County Sheriff's Office Custody Manual—are facts subject to judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (affirming district court's decision to take judicial notice of Department of Labor Field Operations Handbook when granting a motion to dismiss).

Plaintiff is mistaken in arguing that Policy 619.3.3 does not provide for review of medical grievances by medical professionals. *Id.* Rather, Policy 619.3.3 addresses *appeals of decisions* on medical grievances and states:

REPORT AND RECOMMENDATION - 16

> Inmates may appeal the finding of a grievance to the Jail Chief Deputy as the final level of appeal within 72 hours of receiving the findings of the original grievance. The Jail Chief Deputy will review the grievance and either confirm or deny it. If the Jail Chief Deputy confirms the grievance, he/ she will initiate corrective actions. In either case, the inmate shall receive a written response to the appeal.

Mason County Sheriff's Office Custody Manual at 235, available at

https://masoncountywa.gov/forms/sheriff/jail-policy-manual.pdf (last visited Mar. 20, 2024).

The process for reviewing medical grievances is addressed by Policy 619.3.2, which states:

> Upon receiving an inmate grievance, the supervisor shall ensure the grievance is investigated and resolved or denied in a timely manner, as established by the Jail Chief Deputy. The supervisor shall assign the investigation of the grievance to the manager in charge of the department the inmate is grieving. **Grievances related to medical care should be investigated by the Responsible Physician or the authorized designee.** The findings of the investigation, along with any recommendations, shall be forwarded to the Shift Supervisor. Any appeals of the findings of the medical staff shall be forwarded to the Jail Chief Deputy as the final level of appeal.

*Id.* Therefore, Plaintiff's allegation Policy 619.3.3 precluded review of his medical grievances by medical professionals is not correct.

Accordingly, Plaintiff has failed to plausibly allege his claimed constitutional injuries were caused by an official Mason County policy or custom. As such, his final § 1983 claim against Defendant Mason County fails. Thus, Plaintiff's claims against the Defendant Mason County should be dismissed.

### IV. CONCLUSION

For the reasons set forth above, the undersigned recommends Defendants' Motion for Judgment on the Pleadings (Dkt. 46) be granted, Plaintiff's claims for injunctive relief be dismissed as moot, and all other claims be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on April 19, 2024, as noted in the caption.

Dated this 29th day of March, 2024.

David W. Christel
United States Magistrate Judge